Kevin G. Little, SBN 149818
Jessica Juarez, SBN 269600
**LAW OFFICE OF KEVIN G. LITTLE**
201 Spear Street, Suite 1198
San Francisco, CA 94105
Telephone: (415) 287-9800
Facsimile: (559) 242-2400
E-Mail: service@kevinlittle.com

Attorneys for CHRISTOPHER THOMPSON HARDY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER THOMPSON HARDY, an Individual,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED AIRLINES, INC., a Delaware Corporation; AIRSERV CORPORATION, dba "ABM", a Gerogia Corporation,<br><br><br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. Negligence, Negligence per Se (in Violation of Air Carrier Access Act, 49 U.S.C. §41705 *et seq)*;<br>2. Negligent Hiring, Supervision & Retention<br>3. Breach of Contract;<br>4. Negligent Misrepresentation;<br>5. Intentional Infliction of Emotional Distress.<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Christopher Thompson Hardy, an Individual, hereby files this Complaint for Damages and Demand for Jury Trial against Defendants: United Airlines, Inc., a Delaware Corporation; Defendant ABM Aviation, a for Profit, Georgia state Corporation, dba "ABM," and formerly known as AirServ Corporation, a Georgia Corporation, and allege as follows:

**I.    NATURE OF THE ACTION**

This action seeks damages on behalf of Plaintiff Christopher Thompson Hardy (hereinafter "THOMPSON HARDY"), a then 25-year-old disabled young man, (hereinafter "PLAINTIFF" or "THOMPSON JOHNSON"). THOMPSON HARDY suffered personal injury following

Defendants' actions and omissions in the boarding and transfer process of United Airlines Flight No. UA 2105 on August 7, 2024.

In sum, this action alleges that common carrier, Defendant United Airlines, Inc. (hereinafter "UNITED AIRLINES") and its agent contractor, ABM Aviation, (hereinafter "ABM"), failed to abide by the standard of care owed to disabled passengers seeking special assistance by failing to have appropriately trained staff, and/or by ensuring that their contractor ABM is appropriately trained for the safe transport of disabled passengers seeking assistance in boarding.

## II. JURISDICTION AND VENUE

a. This court has federal diversity jurisdiction pursuant to 28 U.S.C.A. §1332, *et seq.* as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

b. Venue is proper in this district as all Plaintiff is a resident of Pittsburg, California, whereas Defendant UNITED AIRLINES is a Delaware corporation with its principal place of business in Chicago, Illinois. Defendant ABM AVIATION is a Georgia state, for profit Corporation.

## III. PARTIES

a. **PLAINTIFF**

  i. **Plaintiff CHRISTOPHER THOMPSON HARDY** is a C-4 / C-5 quadriplegic. On the date of the incident, Thompson Hardy was a 25-year-old man and lived in Pittsburg, California.

b. **DEFENDANTS**

  i. On information and belief, **Defendant UNITED AIRLINES, INC.**, is a commercial airline and air carrier, with its principal place of business in Chicago, Illinois.

    1. Defendant UNITED AIRLINES is authorized to do business in California and conducts substantial business in and out of the San Francisco International Airport (SFO).

2. The California Secretary of State lists the entity's principal address as 233 South Wacker Drive, WHQCT – 14th Floor, Chicago, IL 60606.

3. The California Corporate Number is listed as C1249108.

4. The Agent for Service of Process is listed as C T Corporation located at 111 Eighth Avenue, 13th Floor, New York, NY 10011.

5. Defendant UNITED AIRLINES is an air carrier holding a certificate of public convenience and necessity issued by the Secretary of Transportation under 49 U.S.C. § 41102.

6. At all times herein mentioned, Defendant UNITED AIRLINES was and is a common carrier for hire engaged in the transportation of passengers in both domestic and international air travel.

7. On information and belief, Defendant UNITED AIRLINES owned, operated, controlled, serviced, maintained and flew, through its operators, partners, agents, subcontractors and employees acting in the course and scope of their employment, certain aircraft including the aircraft used for Flight No. UA2105 on August 7, 2024 from San Francisco, California (SFO) to Houston, Texas (IAH), respectively on which Plaintiff flew.

ii. On information and belief, **Defendant ABM AVIATION, INC**. is a Georgia state Profit Corporation, with a Control Number of 0143766, as listed on the Georgia Corporations Division.

1. The Georgia Corporations Division as well as the California Secretary of State lists Defendant ABM's principal place of business as: 14141 Southwest Freeway, Suite 477 Sugar Land, Texas 77478.

2. The California Secretary of State lists 1505 Corporation CT Corporation System as its Agent for Service of Process.

3. Service of Process for C T Corporation System is listed on its website as: 330 North Brand Blvd., Suite 700 Glendale, California 91203.

4. On information and belief, Defendant ABM provided special services for UNITED AIRLINES's disabled passengers requesting assistance in boarding, transfer and deplaning at the San Francisco International Airport (SFO) on February 7, 2024.

## IV. FACTUAL ALLEGATIONS

1. Plaintiff realleges and incorporates by reference all preceding paragraphs as fully set forth herein.

2. On or about June 4, 2024, THOMPSON HARDY's mother, COURTNEY JOHNSON purchased roundtrip tickets from San Francisco International Airport (SFO) to Houston International Airport (IAH) for her and her son, THOMPSON HARDY.

3. Courtney Johnson, Janiah Jeffrey, Thompson Hardy's cousin and family friend, James Rhinehart, were also traveling with Plaintiff.

4. Plaintiff's itinerary was as follows: UA Flight No. UA 2105: departing SFO on August 7, 2024, at 5:00 a.m. to Houston, Texas (IAH-BUSH INTL), with an anticipated arrival time of 10:59 a.m.

### Incident #1 at SFO International Airport — United Airlines and ABM Aviation, Inc.

5. On August 7, 2024, more than two hours prior to his scheduled flight, Plaintiff arrived at the United Airlines check-in counter at San Francisco International Airport (SFO) with his family.

6. Plaintiff and his mother, Courtney Johnson, affirmatively requested special assistance from United Airlines Agent #1 (name unknown) for boarding, transfer, and deplaning.

7. In doing so, Plaintiff voluntarily disclosed that he has quadriplegia and would require disability-related assistance throughout the travel process.

8. Plaintiff also discussed the use of an aisle chair and storage of his personal power wheelchair, which worked perfectly prior to the trip.

9. Agent #1 (Name Unknown) at the check-in counter at SFO communicated that Plaintiff's request for special assistance was no problem and immediately got on the telephone.

10. Upon hanging up, Agent #1 communicated to Plaintiff and his mother, Courtney Johnson, that gate agents should have the aisle chair ready at the gate upon his arrival.

11. Plaintiff arrived at the departure gate for UA Flight No. UA2105 at SFO.

12. No aisle chair was present waiting for THOMPSON HARDY at the departure gate.

13. In order to embark THOMPSON HARDY, it was necessary for him to be transferred from his personal power wheelchair onto a narrower "aisle chair" at the gate.

14. After some time at the departure gate at SFO, two older female wheelchair assistants (names unknown) appeared, wearing ABM vests.

15. One of the agents was a Caucasian older woman (Agent #2) and the accompanying agent was an older Asian woman (Agent #3).

16. Agent #2 repeatedly stated to THOMPSON HARDY that she had worked as a Certified Nurse's Assistant (CNA) for 34 years and not to worry, she knew how to transfer disabled passengers.

17. THOMPSON HARDY communicated to Agent #2 that he was heavy, weighing approximately 220 pounds.

18. Agent #2 repeated to THOMPSON HARDY that she knows how to transfer disabled passengers and that they needed to transfer and board him onto the plane right away.

19. The two female agents, Agents #2 and #3, proceeded with THOMPSON HARDY's transfer.

20. In their attempt, the agents dropped THOMPSON HARDY to the floor at the gate of Flight No. UA2105.

21. Thompson Johnson, Janiah Jeffrey and passenger Billy Wynn observed Plaintiff's drop.

22. Other passengers (names unknown) also witnessed Plaintiff being dropped and on the floor at the gate.

23. Slumped on the floor, THOMPSON HARDY immediately felt pain in his left upper back and left shoulder / neck area.

24. THOMPSON HARDY's cousin, Janiah Jeffrey held Plaintiff's torso up to prevent his toppling over.

25. While on the floor, THOMPSON HARDY began sweating profusely and shaking.

26. THOMPSON HARDY was left on the floor for approximately 20 minutes or longer without further assistance or medical attention.

27. THOMPSON JOHNSON recorded a video of THOMPSON HARDY on the floor after the drop, with his cousin, Janiah Jeffrey supporting him, and Agents #1 and #2 standing near THOMPSON HARDY.

28. Agent #2 repeatedly kept saying to THOMPSON HARDY following the drop, that she had worked as a Certified Nurse's Assistant (CNA) for 34 years and thought she could effectuate his transfer.

29. Agent #3 stayed quiet at all times.

30. After about 20 minutes or more, several male and female agents (names unknown, Agents #4-8) arrived on scene at the gate area at SFO.

31. Two male agents, Agents #4 and #5, lifted THOMPSON HARDY from the floor onto an aisle chair.

32. Agents #6 and #7 strapped THOMPSON HARDY onto the aisle chair.

33. Agents #4 and #5 wheeled THOMPSON HARDY onto the plane.

34. In transferring THOMPSON HARDY to his assigned seat (seat numbers unknown at this time) Agents #4 and #5 dropped THOMPSON HARDY onto the plane's aisle when one of the agents attempted to lift THOMPSON HARDY and the other agent pulled the chair out from under THOMPSON HARDY.

35. This was ABM's second drop of THOMPSON HARDY during the enplaning process.

36. Thompson Johnson, Janiah Jeffrey, Billy Wynn and other unidentified passengers (names unknown at this time) again observed the drop inside of the plane.

37. Agents #4 and #5 managed to lift and transfer THOMPSON HARDY into his seat on the plane.

38. THOMPSON HARDY again began sweating profusely and shaking uncontrollably.

39. THOMPSON HARDY quickly started feeling ill, like his lungs were heavy and clogged, unable to have a productive cough.

40. THOMPSON JOHNSON tried to comfort her son in this state throughout the duration of the flight.

41. The flight departed SFO and arrived at Houston International Airport (IAH) without further incident on August 7, 2024, and arrived at IAH.

42. Upon arrival at IAH, UNITED AIRLINES returned Plaintiff's power wheelchair in a poor condition. The power wheelchair was returned wet and not working. Additionally, a piece connecting the head array to the powerchair was broken and the head array pads were non-functional. The power chair was also unable to recline.

43. THOMPSON JOHNSON reported the poor condition of the power chair to a manager for UNITED AIRLINES upon the completion of the flight, but United Airlines took no action to repair or follow up.

44. THOMPSON HARDY and his family spent the next five (5) days in Houston to celebrate his grandmother.

45. Plaintiff arrived back in SFO on August 14th through a different air carrier.

46. Still not feeling well, on August 15, 2024, THOMPSON HARDY went to the emergency room at Sutter Delta Medical Center in Antioch, California due to back, neck and shoulder pain.

47. He was admitted to the hospital on August 15, 2024, and remained in the hospital for three nights, being discharged on August 18, 2024.

48. THOMPSON HARDY was diagnosed with pneumonia, sepsis and acute respiratory failure with hypoxia.

49. THOMPSON HARDY has continued to feel pain in his neck, back and left shoulder area, preventing him from sitting in his power wheelchair for any significant period and engaging in his usual, activities of daily life.

50. THOMPSON HARDY is receiving physical therapy and continues his treatment with his medical providers.

51. As a result of the acts and omissions by Defendants and each of them, THOMPSON HARDY has been seriously and grievously injured and damaged.

52. Plaintiff Christopher Thompson Hardy suffer and continue to suffer from severe emotional pain and distress.

///

///

///

## II. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Negligence and Negligence Per Se**

(Plaintiff against All Defendants and Does 1-50)

53. Plaintiff realleges and incorporates by reference all preceding paragraphs as fully set forth herein.

54. On or about June 4, 2024, Defendant air carrier, UNITED AIRLINES agreed to safely carry THOMPSON HARDY from San Francisco to his destination of Houston, Texas.

55. At all times herein, Defendant UNITED AIRLINES was a common carrier of persons for hire and as such required to use the utmost care and diligence for safe carriage of disabled passengers, such as THOMPSON HARDY, and must exercise a heightened degree of skill to provide everything necessary for that purpose.

56. Defendant ABM is a contractor or subcontractor of Defendant UNITED AIRLINES, providing special services for disabled passengers requesting assistance at San Francisco International Airport (SFO).

57. By virtue of Defendants' negligence, the actions and omissions as alleged above on the part of said Defendants, and each of them, is a breach of the terms, both explicit and implied, of the contract created by selling airplane tickets to Plaintiff, as well as a breach of Defendants' obligations as air carriers.

58. Plaintiff had fulfilled all obligations on his part for the contract of safe carriage.

59. As a direct and proximate result of defendants' breach as set out above, Plaintiff was damaged as alleged herein.

60. Plaintiff is informed and believe, and therefore allege, that all Defendants, their agents and/or employees, acting in the course and scope of their employment were negligently responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were legally caused by their conduct.

61. At all times herein mentioned, each and every one of the Defendants herein was the agent, servant and employee, each of the other, and each was acting within the course and scope of

1   his/her agency, service and employment with the permission, consent and ratification, each of

2   the other.

3   62. At all times mentioned, Defendants undertook a duty to accommodate THOMPSON HARDY

4   in compliance with anti-discrimination provisions for disabled passengers under federal statutes

5   and regulations.

6   63. The Department of Transportation (hereinafter "DOT") has promulgated regulations, codified

7   at 14 C.F.R. § 382, specifying detailed requirements that airlines must meet to comply with the

8   Air Carrier Access Act (hereinafter "ACAA"), 49 U.S.C. § 41705 *et seq*.

9   64. Air carriers and common carriers such as Defendants UNITED AIRLINES are required to

10  exercise the highest degree of care and diligence for the safe carriage and passage of their

11  ticketed passengers and are required to comply with the provisions of the ACAA in order to

12  avoid injury to its disabled passengers requesting assistance in the onboarding and

13  disembarking processes.

14  65. 14 C.F.R. §382.95 provides in relevant part,

> *As a carrier, you must promptly provide or ensure the provision of assistance requested by or on behalf of passengers with a disability, or offered by carrier or airport operator personnel and accepted by passengers with a disability, in enplaning and deplaning. This assistance must include, as needed, the services of personnel and the use of ground wheelchairs, accessible motorized carts, boarding wheelchairs, and/or on-board wheelchairs where provided in accordance with this part, and ramps or mechanical lifts.*

20  66. 14 C.F.R. § 382 was intended to prohibit air carriers from discriminating against passengers on

21  the basis of disability; requiring carriers to make aircraft, other facilities, and services

22  accessible to disabled passengers; and requires carriers to take steps to accommodate

23  passengers with disabilities. 14 C.F.R. § 382.1.

24  67. Subpart G of the DOT regulations provides in relevant part, that carriers shall ensure that

25  individuals with disabilities are to be provided with assistance in enplaning.

26  68. Subpart J of the DOT regulations requires training for personnel involved in providing

27  boarding and deplaning assistance. Specifically found within the ACAA are specific

requirements regarding the training carriers must provide for personnel involved in providing boarding and deplaning assistance:

    i.    14 C.F.R. § 382.141(a)(1)(iii) (*requiring training to proficiency concerning use of boarding and deplaning assistance equipment and procedures*);

    ii.    *id.* § 382.141(a)(5) (*requiring carriers to develop a program to provide refresher training as needed to maintain proficiency*);

    iii.    *id.* § 382.143 (*detailing requirements for when training must occur*);

    iv.    *id.* § 382.145 (*requiring carriers to retain records regarding initial and refresher training for employees*);

    v.    *id.* § 382.141(a)(i)(iii) (*requiring training to proficiency concerning use of boarding and deplaning assistance equipment and procedures that safeguard the safety and dignity of passengers*);

    vi.    *id.* § 382.141 (a)(1)-(6) (*Carriers must develop a program to provide training and refreshing training to maintain proficiency and provide or ensure that its contractors provide training to the contractors' employees concerning travel by passengers with a disability.*)

    vii.    *id.* § 382.15 (*Carrier must make sure that their contractors provide services to the public that meet the requirements of this part that would apply to you if you provided the services yourself…carriers must include an assurance of compliance in contracts with contractors…Carriers remain responsible for your contractors' compliance with this part and for enforcing assurances in your contracts with them.*)

69. As provided above, Plaintiff requested that air carrier Defendants UNITED AIRLINES provide embarking assistance on his trip from SFO to IAH on February 7, 2024.

70. On or about June 4, 2024, Defendant UNITED AIRLINES agreed to provide transport to THOMPSON HARDY by selling a ticket to Plaintiff's mother.

71. On February 7, 2024, Plaintiff and his family flew from SFO to IAH.

72. On February 7, 2024 THOMPSON HARDY, a quadriplegic individual, was in the class of persons intended to be protected by the ACAA.

73. Defendant UNITED AIRLINES is an air carrier and agreed to provide the requested assistance for THOMPSON HARDY.

74. Defendants UNITED AIRLINES and ABM breached their duty of care owed to THOMPSON HARDY by violating the requirements of the ACAA as follows:

    a. by failing to properly train their employees regarding safe onboarding procedures for THOMPSON HARDY, a disabled passenger requesting assistance, *Id.*;

    b. by failing to properly train their contractors regarding safe enplaning procedures for THOMPSON HARDY, a disabled passenger, *id.*;

    c. by failing to provide safe onboarding assistance as requested, 14 C.F.R. § 382.95;

    d. by failing to provide the personnel necessary for the safe deplaning process of THOMPSON HARDY, *id.*;

    e. by failing to adhere to safety measures, protocols for the safe deplaning process for THOMPSON HARDY;

    f. by failing to use the appropriate devices for providing assistance in the deplaning of THOMPSON HARDY, a disabled passenger, 14 C.F.R. § 382.95;

    g. by failing to provide compliant seating accommodations to THOMPSON HARDY, 14 C.F.R. § 382.81; and

75. Defendants' acts and omissions as described above were a substantial factor in bringing about the harm to THOMPSON HARDY and THOMPSON JOHNSON and proximately caused injury to Plaintiff.

76. The injuries suffered by THOMPSON HARDY were the kind of occurrences that the ACAA was designed to prevent.

77. As a direct and proximate result of all Defendants' failure to follow federal Statutes and Regulations and instead, in acting recklessly, maliciously, lacking even slight care and diligence, and exhibiting utter disregard for the dictates of prudence, amounting to complete neglect of the rights of others and the rights of disabled passengers, THOMPSON HARDY suffered serious injury.

78. As a proximate result thereof, THOMPSON HARDY has suffered and continues to suffer personal bodily and emotional injury.

79. Since the date of the incident, THOMPSON HARDY has sustained serious personal injuries, including but not limited to experiencing emotional and physical pain in his neck, back and shoulder areas. These injuries have severely affected his ability to engage in his typical daily life activities.

80. THOMPSON HARDY has had to forgo traveling by plane and has consequently missed important family events due to the fear and anxiety he now has about flying.

81. THOMPSON HARDY has had, and in the future will have, pain, suffering, worry and anxiety, all to Plaintiff's general damages in an amount to be proven at trial.

82. As a proximate result thereof, THOMPSON HARDY incurred, and in the future, will incur medical and related expenses all to THOMPSON HARDY's damage in such amount as will be proven at trial.

83. As a proximate result thereof, THOMPSON HARDY has lost the ability to sit in his power chair for extended periods of time, making it difficult for him to engage in the typical tasks of his everyday life.

84. THOMPSON HARDY has and will have lost earning capacity all to THOMPSON HARDY's damage in such amount as will be proven at trial.

85. Plaintiff has been unable to follow his regular employment schedules and has incurred expenses for needed medical care, treatment and related costs and expenses. Plaintiff's damages in this respect are presently unascertained and are continuing.

86. As a further proximate result of the acts and omissions of Defendants and each of them, Plaintiff has sustained substantial economic and non-economic damages, in amounts according to proof at trial.

87. Defendants' acts and omissions as set forth in this complaint were oppressive and malicious and a knowing and reckless breach of Defendants' statutory duty.

88. Defendants' acts and omissions were willful and with conscious disregard of THOMPSON HARDY's rights and safety and in that they subjected him to cruel and unjust hardship in conscious disregard of his rights and safety.

89. The totality of Defendants' conduct, actions and omissions, in the onboarding of THOMPSON HARDY was so egregious and such a *gross* deviation from the applicable standard of care that malice may be implied to justify a significant award of punitive damages.

90. Alternatively, or additionally, the totality of Defendants' conduct demonstrated altogether an entire want of care raising the presumption of a conscious indifference and reckless disregard to the consequences sufficient to justify a significant award of punitive damages.

91. Accordingly, Plaintiff is entitled to an award of punitive damages in an amount to be determined at trial for the extreme recklessness, willful and conscious disregard of the rights and safety of Plaintiff as exhibited by Defendants' acts and omission.

92. WHEREFORE, Plaintiff requests relief as hereinafter provided.

## SECOND CAUSE OF ACTION

### Negligent Hiring, Supervision or Retention of Employee

(Plaintiff against All Defendants and Does 1-50)

93. Plaintiff realleges and incorporates by reference all preceding paragraphs as fully set forth herein.

94. Plaintiff claims that he was harmed by the acts and/or omissions of Defendants' individual agents, supervisors and personnel (including but not limited to: Agents #1-7), and that Defendants UNITED AIRLINES and ABM are responsible for the harms as alleged above, because they each negligently hired, supervised and/or retained the employees whose actions or omissions caused Plaintiff's harms.

95. Defendants hired each of the employees identified above.

96. Each employee was unfit or incompetent to perform the special assistance work for which each was hired.

97. Defendants at all times relevant herein knew or should have known that each employee was unfit or incompetent or created a particular risk to all passengers.

98. The employees' unfitness or incompetence harmed each plaintiff as alleged above.

99. Defendants' negligence in hiring, supervising, and retaining the individuals as described above was a substantial factor in causing Plaintiff's harm.

100. WHEREFORE, Plaintiff requests relief as hereinafter provided.

### THIRD CAUSE OF ACTION

### Breach of Contract

(Plaintiff against All Defendants and Does 1-50)

101. Plaintiff realleges and incorporate by reference all preceding paragraphs as fully set forth herein.

102. On or about June 4, 2024, Plaintiff's mother, purchased airline tickets, thereby entering into a contract with Defendant UNITED AIRLINES.

103. Defendants UNITED AIRLINES is bound to a contract with Plaintiff, in part, evidenced by its Contracts of Carriage (hereinafter "COC").

104. In relevant part, the COC for Defendant UNITED AIRLINES provides that it:

> *…constitute[s] the conditions of carriage upon which UA agrees to provide Domestic… Carriage and are expressly agreed to by the Passenger…and [t]he rules herein are applicable to transportation of Passengers…provided by UA…UA's obligations hereunder extend only to the Ticketed Passenger.*

105. The contract specifically provides in "Rule 14 Special Services" as follows:

> *A. Definition of Non-Ambulatory under this Rule: 1. Persons who are unable to move themselves or need the support of another person to walk or move, but who are otherwise capable of caring for themselves without assistance throughout the flight are considered Non-Ambulatory….*
>
> *B. Qualifications for Acceptance of Non-Ambulatory Passengers - Non-Ambulatory Passengers are accepted when accompanied by an assistant able to assist the Non-Ambulatory Passenger to evacuate the aircraft in accordance with 14 CFR Part 382.29. See Rule 21.*
>
> *C. Qualified Individual with a Disability - UA requires a Passenger, including a Qualified Individual with a Disability, to provide up to 48 hours' advance notice and check-in one hour before the check-in time for the general public for Domestic U.S. flights and for International flights as set forth in Rules 5 D) and 5 E) if such Passenger wishes to receive any of the following service accommodations: 1. Transportation of an electric wheelchair on an aircraft with fewer than 60 seats….*

> *D. When Travel Assistance is Required: 1. If UA determines that an assistant is essential for safety, UA may require that a Passenger, including a Qualified Individual with a Disability, meeting any of the following criteria travel with an assistant as a condition of being provided*
> *air transportation: ... b. A person with a mobility impairment so severe that the person is unable to physically assist in his or her evacuation of the aircraft; ...*

106. Plaintiff was a ticketed passenger as provided in the COC and THOMPSON HARDY is a qualified individual with a disability.

107. Plaintiff at all times fulfilled all obligations on his part for the contract of safe carriage.

108. Defendants, however, failed to provide safe carriage, causing significant harm to Plaintiff.

109. The activities alleged above on the part of said Defendants, and each of them, is a breach of the terms, both explicit and implied, of the contract created by Defendant UNITED AIRLINES selling a ticket to Plaintiff as well as a breach of their respective obligations as a common carrier to provide safe passage.

110. As a direct and proximate result of defendants' breach as set out above, Plaintiff was damaged as alleged herein, in an amount subject to proof at trial.

111. WHEREFORE, Plaintiff requests relief as hereinafter provided.

## FOURTH CAUSE OF ACTION

### Negligent Misrepresentation

(Plaintiff against Defendant UNITED AIRLINES)

112. Plaintiff realleges and incorporates by reference all preceding paragraphs as fully set forth herein.

113. Defendant UNITED AIRLINES via its agent (name(s) unknown, Agent #1) at its check-in desk at SFO, on February 7, 2024, misrepresented to Plaintiff and his mother, THOMPSON JOHNSON that he could be accommodated and provided with the necessary disability related assistance as requested on the family's trip from SFO to IAH.

114. Defendant UNITED AIRLINES' representations were untrue as THOMPSON HARDY did not receive the requested special assistance as required at SFO.

115. Air carrier Defendants UNITED AIRLINES made the misrepresentations of the material fact without reasonable grounds for believing the representations were true when the representations were made.

116. Defendant UNITED AIRLINES intended that Plaintiff rely on this representation.

117. Plaintiff reasonably and justifiably relied on Defendant UNITED AIRLINES' representations and were unaware of the falsity of the representations made by Defendant's agents.

118. As a result of the reliance upon the agents' representations, Plaintiff was harmed. As provided above, THOMPSON HARDY suffered serious emotional and physical injury.

119. Plaintiff's reliance on Defendant UNITED AIRLINES' representations were a substantial factor in causing his harm.

120. WHEREFORE, Plaintiff requests relief as hereinafter provided.

## FIFTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

(Plaintiff against All Defendants and Does 1-50)

121. Plaintiff realleges and incorporates by reference all preceding paragraphs as fully set forth herein.

122. Defendants at all times knew that THOMPSON HARDY was a disabled, quadriplegic individual, with a trach tube, ventilator and power wheelchair.

123. Defendants exhibited extreme and outrageous conduct in the following acts and omissions:
    i. negligently hiring and supervising agents, employees, subcontractors and/or operators;
    ii. failing to provide the sufficient training for its agents, employees, subcontractors and/or operators;
    iii. failing to provide an appropriate number of trained personnel for onboarding THOMPSON HARDY at SFO;
    iv. failing to provide safe onboarding assistance for THOMPSON HARDY, a quadriplegic young man after agreeing to provide safe passage for him;

    v.    failing to exercise care in preventing serious personal injury to THOMPSON HARDY;

    vi.    failing to have and/or implement adequate onboarding policies and procedures;

    vii.    failing to adequately protect THOMPSON HARDY, a disabled passenger;

    viii.    failing to act reasonably under the circumstances to avoid an unreasonable risk of harm to THOMPSON HARDY; and

124. As provided above, Defendants' acts and omissions evidence shocking, outrageous conduct that is so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

125. As a result of the aforementioned acts, Defendants caused Plaintiff to suffer severe emotional distress in the form of shock, fear, worry, distress, anxiety, depression, weight gain and angst.

126. Defendants' conduct by their acts and omissions was a substantial factor in causing Plaintiff's severe emotional distress.

127. WHEREFORE, Plaintiff requests relief as hereinafter provided.

## **PRAYER FOR RELIEF**

1. Wherefore Plaintiff prays for judgment against Defendants as follows:

   a. For a money judgment representing general and compensatory damages including necessary and reasonable medical expenses and reasonably anticipated future medical expenses;

   b. For a money judgment representing past and future impairment of ability to enjoy life;

   c. For a money judgment representing loss of future earnings, retirement benefits and other employee benefits, and all other sums of money, together with interest on these amounts, according to proof at trial;

   d. For a money judgment for mental anguish, pain and suffering (past, present and for that mental anguish, pain and suffering reasonably likely to occur in the future) according to proof at trial;

e. For punitive / exemplary damages in an amount appropriate to punish the individual Defendants for their willful, callous, reckless, wrongful and malicious conduct and effectively deter Defendants from engaging in similar conduct and to set an example for other common carriers in the provision of assistance to disabled passengers asking for assistance;

f. For general and special damages according to proof;

g. For prejudgment and post-judgment interest;

h. Reasonable attorneys' fees and costs;

i. For injunctive relief to ensure that all passengers with disabilities seeking assistance in the embarking and disembarking process are provided the necessary assistance and are provided with equal access and dignity as the law requires; and

j. For any other relief that the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Dated: August 19, 2025

Law Office of Kevin G. Little

/s/ Kevin G. Little
Kevin G. Little
Jessica Juarez
Attorneys for Plaintiff CHRISTOPHER THOMPSON HARDY